# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

WILLIAM WEAVER,

        Plaintiff,

v.                               Case No:   6:23-cv-2059-CEM-LHP

GREEN SOLUTIONS OF FLORIDA
LLC,

        Defendant

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

In this case arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Florida Telephone Solicitations Act, Fla. Stat. § 501.059 ("FTSA"), Plaintiff has filed a Motion for Class Certification, seeking certification of a class under the FTSA.   Doc. No. 39; s*ee also* Doc. No. 43. Defendant opposes.   Doc. No. 41.   The matter has been referred to the undersigned, and it is ripe for review.   Upon review, and for the reasons that follow, the undersigned will respectfully recommend that Plaintiff's motion (Doc. No. 39) be **GRANTED**.

## I.    BACKGROUND.

On October 25, 2023, Plaintiff William Weaver, on behalf of himself and others similarly situated, filed this case against Defendant Green Solutions of Florida LLC.   Doc. No. 1.   Plaintiff alleges that his personal phone number is registered on the National Do Not Call Registry, but he still received non-emergency, automated telemarketing calls from Defendant attempting to sell solar panels, without his consent.   *Id.* ¶¶ 2, 17–19, 20–21, 29–31, 47.   And despite a request for no further contact, he received subsequent solicitations, attempting to enroll Plaintiff in Defendant's solar program.   *Id.* ¶¶ 24–26.   Other individuals have likewise complained about receiving telemarketing calls from at least one of the numbers that called Plaintiff.   *Id.* ¶ 23.   Plaintiff brings a claim under the FTSA for the automated telephonic solicitations made without his or class members' written consent.   *Id.* ¶¶ 43–50.   Plaintiff also brings a claim under the TCPA for the telemarketing calls made to him and class members on the National Do Not Call Registry.   *Id.* ¶¶ 51–55.

Pursuant to the case schedule, Plaintiff timely filed a motion for class certification on January 15, 2025.   Doc. No. 39; *see also* Doc. Nos. 16, 37.   The motion is brought to certify a class under the FTSA alone, and does not address the

TCPA claim.   Doc. No. 39.   Accordingly, the analysis in this report is hereafter so limited.[1]

Plaintiff seeks to certify the following proposed class:

All persons (1) with a Florida area code telephone number (2) who received a call from GSFL Center (3) to a telephone number (a) purchased from Generational Energy or (b) for which Green Solutions has no record of the source (4) that was GSFL Center's first attempt to call the number and (5) was made using the ChaseData Dialer (6) in "Outbound" mode (7) as part of the "solar" campaign and (8) are included in Exhibit 8 to Plaintiff's expert's report.

*Id.* at 5 (footnote omitted).   Plaintiff's motion alleges that Defendant sells home improvement products in Florida by use of a call center, GSFL Center,[2] that sets appointments for energy reviews using a marketing call script, during which subsequent energy reviews Defendant's representatives go to consumers' homes in an attempt to sell Defendant's products.   *Id.* at 2.   Plaintiff says that the majority of the Florida phone numbers are purchased from a third-party company, and there is no evidence that Defendant has express consent to call any of them.   *Id.* at 3. The call center uses an autodialer from another company called ChaseData to dial

---

[1] That said, the TCPA has been referred to as the "federal analog to [the] FTSA." *See Frater v. Lend Smart Mortg., LLC*, No. 22-22168-CIV, 2022 WL 4483753, at *2 (S.D. Fla. Sept. 27, 2022).

[2] As explained in the motion, "the call center, GSFL Center, is technically a separate Florida entity, it has the same owner and operator as Green Solutions, and, in addition to being a call center, is Green Solutions' 'administrative leg.'"   Doc. No. 39, at 2–3. Defendant does not dispute this representation, Doc. No. 41, and stipulates that GSFL Center was Defendant's agent, Doc. No. 39-3, at 1.

the numbers and connect the called party to call center agents.  *Id.* at 3–4.   During discovery, Plaintiff obtained call records from the call center using the ChaseData dialer on Defendant's behalf, which includes 1,702 energy review automated calls made to Florida numbers and connected with a call center agent, according to Plaintiff's expert.  *Id.* at 4.

Plaintiff submits with the motion the deposition transcript and related exhibits for John Rivera, owner of Green Solutions (Doc. No. 39-1), Defendant's records with the Florida Department of State (Doc. No. 39-2), an email chain between counsel (Doc. No. 39-3), a declaration from Plaintiff's expert, Aaron Wolfson, and related exhibits (Doc. No. 39-4), a declaration from Plaintiff (Doc. No. 39-5), and a declaration from Plaintiff's counsel (Doc. No. 39-6).

Defendant has filed a timely response in opposition, arguing that Plaintiff does not meet all of the requirements for class certification, and in particular arguing that the calls at issue do not qualify as "telephonic sales calls" under the FTSA.  Doc. No. 41.  Defendant submits with its response Plaintiff's deposition transcript (Doc. No. 41-1), the declaration of Austin Joseph Barber, an advertising and promotions representative for Defendant, and related exhibits (Doc. No. 41-2), the declaration of Richard Franklin Williams, a manager for Defendant (Doc. No. 41-3), the declaration of John Rivera, Defendant's owner (Doc. No. 41-4), and a website printout of Plaintiff's criminal history (Doc. No. 41-5).  Doc. No. 41.

Plaintiff timely replies, Doc. No. 43, and includes another declaration by himself (Doc. No. 43-1).

## II.     LEGAL STANDARDS.

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."   *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citation omitted); *see also Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003) ("Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." (footnote omitted)).   As a threshold issue, Plaintiff must also demonstrate that the proposed class is "adequately defined and clearly ascertainable."   *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

The party seeking class certification bears the burden of showing that the proposed class meets Rule 23's requirements.   *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016).   Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class

(typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).   Fed. R. Civ. P. 23(a).

The party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."   *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Little*, 691 F.3d at 1304.   Here, Plaintiff seeks certification under Rule 23(b)(3), *see* Doc. No. 39, at 18, which requires that the Court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   Relevant considerations include: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.   *Id.*

District courts are vested with significant discretion in deciding whether to certify a class.   *See Vega*, 564 F.3d at 1264.   While the Court's certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."   *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66

(2013) (citations omitted).   Courts conduct a "rigorous analysis" of the Rule 23

requirements.   *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 699 (S.D. Fla.

2018) (quoting *Vega*, 564 F.3d at 1266).   Failure to establish any one of the 23(a)

factors and at least one of the Rule 23(b) requirements precludes class certification.

*See Valley Drug*, 350 F.3d at 1188.

### III.    ANALYSIS.

A.    <u>Standing</u>.

Prior to the certification of a class, and before undertaking any analysis under

Rule 23, a district court must determine that the named representative has Article

III standing.   *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000); *see also*

*Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class

certification must begin with the issue of standing[.]").   "Only after the court

determines the issues for which the named plaintiffs have standing should it

address the question whether the named plaintiffs have representative capacity, as

defined by Rule 23(a), to assert the rights of others."   *Griffin*, 823 F.2d at 1482

(citation omitted).   "The plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision."   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

1547 (2016) (citations omitted).

Here, Defendant does not contest the named Plaintiff's standing.    Doc. No. 41.    And the undersigned finds that Plaintiff has the requisite standing in order to bring this action under the FTSA.    The FTSA prohibits the making of "unsolicited telephonic sales call[s]" if they are made using "automated system for the selection and dialing of telephone numbers . . . without the prior express written consent of the called party."    Fla. Stat. §§ 501.059(8)(a), 10(a)–(b).    In the complaint, Plaintiff alleges automated telemarking calls without prior consent and after a request to stop, and harm resulting therefrom.    Doc. No. 1 ¶¶ 2, 17–19, 20–21, 24–26, 29–31, 34, 43–50.    This is sufficient to confer standing.    *See, e.g.*, *Morris v. Lincare*, Inc., No. 8:22-cv-2048-CEH-AAS, 2025 WL 605616, at *4 (M.D. Fla. Feb. 25, 2025) (finding similar allegations sufficient to confer standing for FTSA and TCPA claims); *see also Cordova v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) (receipt of an unwanted prerecorded voice call "made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing").

B.    <u>Adequately Defined and Clearly Ascertainable</u>.

Next, a plaintiff must establish that the proposed class is adequately defined and clearly ascertainable.    *See, e.g.*, *Little*, 691 F.3d at 1304; *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly

ascertainable." (citations omitted)).[3]  "[A] proposed class is ascertainable if it is adequately defined such that its membership is capable of determination."  *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) (citation omitted).

> Here, Plaintiff provides the following class definition:

> All persons (1) with a Florida area code telephone number (2) who received a call from GSFL Center (3) to a telephone number (a) purchased from Generational Energy or (b) for which Green Solutions has no record of the source (4) that was GSFL Center's first attempt to call the number and (5) was made using the ChaseData Dialer (6) in "Outbound" mode (7) as part of the "solar" campaign and (8) are included in Exhibit 8 to Plaintiff's expert's report.

Doc. No. 39, at 5 (footnote omitted).

Defendant does not challenge whether the class is adequately defined or clearly ascertainable.  Doc. No. 41.  And the undersigned finds these prerequisites met, given that Plaintiff seeks to define the class based on objective criteria.  *See, e.g.*, *Morris*, 2025 WL 605616, at *5 (finding FTSA class adequately defined and clearly ascertainable, defined as "All persons with a Florida area code telephone number, whose cellular telephone number was provided to Defendant by [third party] and who, since July 1, 2021 through the filing of this lawsuit, received one or more prerecorded calls on their cellular telephone, requesting a return call to

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Defendant."); *see also Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (class is ascertainable when "the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way").[4]   Indeed, Plaintiff's expert, Aaron Woolfson, opines that "by using records of the calls made by or on behalf of Defendant, there is a reliable method to identify which calls were made to Florida telephone numbers using certain dialing modes provided by the dialing platform."   *See* Doc. No. 39-4, at 1 ¶ 4.   Mr. Woolfson analyzed 601,015 calls within Defendant's database, excluded non-qualifying calls, and identified 1,702 calls to 1,702 unique telephone numbers that received the calls at issue.   *Id.* ¶¶ 30–40; *see also id.* at 246–263 (providing list of specific phone numbers).

Accordingly, the undersigned finds the ascertainability requirement met. *Cf. Kron*, 328 F.R.D. at 700 (TCPA class ascertainable because plaintiff "will be able to determine class members' identities using Defendant's phone records").

C.    <u>Numerosity</u>.

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable."    Fed. R. Civ. P. 23(a)(1).    "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."   *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *see also C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 689 (S.D. Fla. 2014). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267 (citations and internal quotations omitted). "Although mere numbers are not dispositive, the general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *C-Mart*, 299 F.R.D. at 689 (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Kuehn v. Cadle Co.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007)).

Defendant does not contest numerosity. Doc. No. 41. Given that Plaintiff's expert opines to 1,702 prospective class members, the undersigned finds the numerosity requirement met. *See* Doc. No. 39-4 ¶¶ 30–40; *id.* at 246–263; *see also Morris*, 2025 WL 605616, at *6 (1703 FTSA class members satisfied the numerosity requirement).

D.   Commonality.

To satisfy Rule 23(a)(2)'s commonality requirement, the class members' "claims must depend upon a common contention," and the common contention "must be of such a nature that it is capable of classwide resolution." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (commonality met if "the allegations involve a common course of conduct by the defendant").   Not all questions of law and fact need to be common, but as the Supreme Court clarified, this requirement is not met merely because the putative class members allegedly "all suffered a violation of the same provision of law."   *See Dukes*, 564 U.S. at 350.   It is not just the presence of common questions that matter, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke."   *Id.*

Plaintiff identifies four common questions that he contends can be resolved via class action: (1) whether the calls constituted "telephonic sales calls" under the FTSA;[5] (2) whether Defendant used an "automated system for the selection or dialing of telephone numbers" under the FTSA; (3) whether Defendant is vicariously liable for the calling conduct of GSFL Center; and (4) whether the calls were made to Florida.   Doc. No. 39, at 8.

Defendant, for its part, disputes that the commonality requirement is met. Doc. No. 41, at 3–4.   Specifically, Defendant argues that the central dispute in this

---

[5] The FTSA defines a telephonic sales call as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."   Fla. Stat. § 501.059(1)(j).

case is whether the calls at issue qualified as "telephonic sales calls" under the FTSA, which Defendant contends will require individualized inquiries for the class members. *Id.* at 3. Defendant also submits declarations from its employees stating that Defendant engaged in no sales activity over the phone, Defendant used the calls solely to set appointments for complimentary energy reviews and did not sell Defendant's products or services, and the calls did not obligate any customer to proceed with a transaction following the energy review. *Id.* at 4; *see also* Doc. Nos. 41-2, 41-3. And because these calls were strictly for scheduling appointments, Defendant says it was not required to obtain a telemarketing license under Florida law. Doc. No. 41, at 4; *see also* Doc. No. 41-4 ¶¶ 4–5.

In reply, Plaintiff maintains that the question of whether the calls to Plaintiff and the putative class members were "telephonic sales calls" under the FTSA is a centrally determinative question that lends itself to common proof. Doc. No. 43, at 2, 4. Plaintiff also states that although Defendant maintains that the calls were for appointment setting only, the evidence suggests otherwise, given corporate representative testimony, a "marketing" script for the calls, and a credit application, contract, and other documents used as part of the appointments. *Id.* at 4.

Upon consideration, despite Defendant's contentions, the undersigned finds that Claimant has met the "relatively light burden" on the commonality requirement. *See Vega*, 564 F.3d at 1268. Specifically, Plaintiff demonstrates that

there are common questions of law and fact involved, to include whether the calls constituted "telephonic sales calls" under the FTSA.   While Defendant would have the Court determine this merits-based question at the class certification stage, courts have found similar inquiries render the matter appropriate for class certification in the first instance. *See, e.g., Morris*, 2025 WL 605616, at *6 (finding commonality satisfied with regard to similar FTSA class certification based on common legal and factual issues involved, and despite the defendant's contention that individualized issues regarding consent existed); *Shutler v. Citizens Disability LLC*, 347 F.R.D. 663, 672 (S.D. Fla. 2024) (commonality requirement met to determine whether the purpose of the calls was telemarketing in TCPA case); *see also Powell v. YouFit Health Clubs LLC*, No. 17-CV-62328, 2019 WL 926131, at *4 (S.D. Fla. Jan. 14, 2019) (commonality met when common questions included whether messages constituted telemarketing and whether the text messages were "dual-purpose" communications).

    E.    <u>Typicality</u>.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."  Fed. R. Civ. P. 23(a)(3). "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class

certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (alteration in original) (citing *Prado-Steiman*, 221 F.3d at 1278–79). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Thus, "[e]ven if the fact patterns are unique to each claim, if the class representative and class members experienced the same unlawful conduct, the typicality requirement will be satisfied." *Morris*, 2025 WL 605616, at *7 (citing *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004)).

Plaintiff argues that typicality is satisfied because Defendant's agent called Plaintiff and the proposed class members' Florida phone numbers, using the same dialing system, on the same mode, as part of the same campaign, for the same purpose, and without consent. Doc. No. 39, at 10.

Defendant, however, argues that typicality is not met because Plaintiff's claims differ significantly from those of potential class members, in that Plaintiff alleges that he received an unlawful sales call, but he never completed an energy review in contrast to other proposed class members. Doc. No. 41, at 4; *see also* Doc. 41-2 ¶¶ 16–18. So, Defendant contends that Plaintiff's FTSA claim is not representative of those of class members who may have fully participated in the energy review process. Doc. No. 41, at 5.

The undersigned finds Defendant's position unpersuasive and the typicality requirement satisfied. Specifically, Plaintiff's claims and those of the class are similar, if not identical—Plaintiff and the class were subjected to the same automated calls from Defendant through the call center agent and without consent, and they would seek the same statutory relief under the FTSA. *See* Doc. Nos. 1, 39. Defendant points to no authority demonstrating that Plaintiff's failure to participate in an energy review process *after* the calls alters this analysis. Doc. No. 41, at 4–5. Thus, the undersigned finds that a "sufficient nexus" exists between the named Plaintiff's claims and those of the individual class members. *See Ault*, 692 F.3d at 1216 (quoting *Prado–Steiman*, 221 F.3d at 1278–79); *see also Morris*, 2025 WL 605616, at *7 (finding typicality requirement satisfied in similar FTSA case); *cf. Kron,* 328 F.R.D. at 701 ("Plaintiff has established that the course of conduct that produced its TCPA violation also produced the claims of the proposed class. There exists a sufficient nexus to satisfy the typicality requirement." (citations omitted)).

F.    Adequacy of Representation.

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation under Rule 23(a)(4) "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."

*Valley Drug Co.*, 350 F.3d at 1189 (citation omitted).   "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy."   *Id.* (citations omitted).

Plaintiff argues that he has no conflicting interests with class members, he has ably prosecuted this case, and he has a demonstrated desire to protect class members' interests.   Doc. No. 39, at 11; *see also* Doc. No. 39-5, Doc. No. 43, at 7–8, Doc. No. 43-1.   However, Defendant argues that Plaintiff's criminal history raises "serious adequacy concerns" because Plaintiff's criminal history includes crimes of dishonesty.   Doc. No. 41, at 9; *see also* Doc. No. 41-5 (copy of criminal docket sheet from Volusia County Clerk of Court showing Plaintiff's criminal charges from 2005 to 2012 for dealing in stolen property, sexual battery, larceny, grand theft, burglary, and trespass).

Upon review, the undersigned agrees with Plaintiff that Defendant fails to connect his attenuated criminal history to his adequacy as a class representative. Indeed, besides pointing to the criminal history, Defendant does not argue that this criminal history creates a substantial conflict between Plaintiff and the class members' interest, or that such criminal history affects Plaintiff's ability to prosecute this action.   Accordingly, the undersigned finds Defendant's attack on Plaintiff's adequacy unavailing.   *See, e.g., Connor v. Permanent Gen. Assurance Corp.*, No. 9:20-

CV-81979-WPD, 2022 WL 1642866, at *7 (S.D. Fla. Apr. 11, 2022) ("Being convicted of a felony or serving time in prison does not automatically disqualify a class representative." (citations omitted)); *see also, e.g.*, *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014), *amended*, 2016 WL 1071571 (E.D. Va. Mar. 15, 2016) ("[T]here is no precedent that the Court could find or that JRK provides that indicates that a representative is inadequate based upon a criminal record alone.").

As to class counsel, Defendant does not contest adequacy. Doc. No. 41, at 9–10. And Plaintiff submits that his counsel "are adequate because they have no conflict of interest with proposed class members, are experienced, have the financial and other firm resources to properly manage this case as a class suit, have extensively litigated this case, and will continue to do so." Doc. No. 39-6 ¶ 2. Further, Plaintiff's counsel have extensive experience and expertise prosecuting complex class actions, in particular consumer class actions and TCPA cases, having been appointed as class counsel in numerous cases. *Id.* ¶¶ 3–4, 7. Accordingly, the undersigned finds class counsel adequate pursuant to the requirements of Rule 23(g). *See* Fed. R. Civ. P. 23(g)(1)(A) (stating that in appointing class counsel, the Court considers the work counsel has done in identifying or investigating potential claims; counsel's experience in handling class actions, other complex litigation, and

the types of claims asserted; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class).

Based on the foregoing, the undersigned finds that Plaintiff and his counsel would adequately represent the putative class.  *See, e.g.*, *C-Mart*, 299 F.R.D. at 690 (finding adequacy requirement met where named plaintiff was aware of the violation, understood his responsibilities, demonstrated a willingness to represent the class, which had similar claims, and class counsel was sufficiently qualified and experienced and had been found adequate in prior class actions).

G.    Requirements Under Rule 23(b)(3).

In addition to establishing the Rule 23(a) requirements, a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b).  *See* Fed. R. Civ. P. 23(b); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).  In this case, Plaintiff is pursuing certification under Rule 23(b)(3).  Doc. No. 39, at 12.  Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011).

1.    *Predominance.*

"To obtain Rule 23(b)(3) certification, the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole must predominate over the issues that are subject to individualized proof." *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 315 (S.D. Fla. 2017) (citing *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009)). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on their entitlement to relief." *Id*. at 316 (citing *Babineau*, 576 F.3d at 1191). "If plaintiffs must present a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their claims, certification under Rule 23(b)(3) is inappropriate." *Id*. (citing *Babineau*, 576 F.3d at 1191).

Plaintiff argues that the predominance factor is met because the factual circumstances pertaining to the proposed class are substantively identical— Defendant purchased a list of telephone numbers for which it had no consent to call, used an automated dialer to call the numbers, and contacted the putative class members using a single dialing mode as part of a single campaign, and each of the class members were harmed in the same way through receipt of the unsolicited, autodialed telemarketing calls. Doc. No. 39, at 13. Plaintiff points to the elements of a FTSA claim ("telephonic sales call[s]" made using "automated system for the

selection and dialing of telephone numbers . . . without the prior express written consent of the called party," *see* Fla. Stat. §§ 501.059(8)(a), 10(a)–(b)), and says these can be met for the class by common evidence, such that:

- The question of whether Defendant made "telephonic sales calls" as defined by the FTSA is common to all class members—Plaintiff will use Defendant's call records and other documentation and the testimony of its employees, to include an energy review packet used by Defendant's representatives during the home energy reviews (contract, credit application, work order, and the call script titled "marketing script").   Doc. No. 39, at 13–14 (citing Doc. No. 39-1, at 23–25, 32–37, 45–47 & Exs. 1 & 5).

- Common evidence exists as to whether Defendant used an automated system for the calls, to include Defendant's call records identifying calls made in "outbound" mode, the dialer manual, and Defendant's testimony.   Doc. No. 39, at 14–15 (citing Doc. No. 39-1, at 15).

- Common evidence exists as to whether the calls were made to numbers in Florida, to include Defendant's owner's testimony that Defendant was attempting to contact Florida residents alone; Plaintiff's expert opinions and analysis of numbers with Florida area codes alone; and the FTSA's presumption that calls made to a Florida area code were made to a Florida

resident or person in Florida at the time of the call.   Doc. No. 39, at 15 (citing Doc. No. 39-1, at 23; Doc. No. 39-4 ¶ 38; Fla. Stat. § 501.059(8)(d)).

- The issue of consent is common to all class members and can be resolved on a common basis because Defendant has conceded it did not have any written evidence of consent to make the calls.   Doc. No. 39, at 15–16 (citing Doc. No. 39-1, at 13, 47).

- The issue of class member standing is resolvable on a collective/common basis because all class members, by definition, received the same, unsolicited telemarketing calls to Florida telephone numbers and suffered the same injury (unwanted call) given Defendant's challenged conduct.   Doc. No. 39, at 16–17.

- The issue of damages is statutory and whether Defendant's conduct was willful or knowing is also subject to resolution on common proof, given the focus on Defendant's actions.    Doc. No. 39, at 17 (citing Fla. Stat. § 501.059(10)).

Defendant, on the other hand, says that whether the calls qualified as "telephonic sales calls" under the FTSA is a fact-intensive inquiry requiring individualized determinations because whether a call fits within the FTSA definition depends on specific content and context, not its existence.   Doc. No. 41, at 5.   Defendant says that its employees' receipt of commissions does not render

the calls "telephonic sales calls," and that the materials brought to post-call appointments (order form and credit application, etc.) are irrelevant because the content of the call itself is what matters. *Id.* at 5–7. Defendant also says that individualized issues exist, such that one homeowner, "Dolores," received a benefit from a representative's visit but no sales were made or discussed, and whether an energy review actually led to a sale differs amongst the class members. *Id.* at 7–8; *see also* 39-1, at 38–39; Doc. No. 41-2 ¶¶ 13–15. The same example of "Dolores" demonstrates that not all potential class members suffered concrete injury according to Defendant. *Id.* at 8–9 (citing Doc. No. 41-2 ¶¶ 13–15).

On review, the undersigned finds the predominance requirement met, such that, as Plaintiff argues, most of the issues in this case appear to be subject to common proof, to include whether the calls made by Defendant qualified as "telephonic sales calls," whether Defendant used an automated system to make the calls, whether the calls were made to persons in Florida, and whether Defendant had the called parties' consent. Although Defendant argues that the "telephonic sales call" inquiry is fact-specific,[6] courts routinely find that the purpose of alleged

---

[6] The undersigned notes that in support of its argument, Defendant does not point to any cases stating that the issue of whether a call qualifies as a "telephonic sales call" is inappropriate for class-wide resolution, and instead, relies on two cases addressing motions to dismiss. Doc. No. 41, at 5; *see Suescum v. Fam. First Life, LLC*, No. 6:21-cv-1769-WWB-EJK, 2023 WL 311144 (M.D. Fla. Jan. 19, 2023); *Calvin v. Humana Inc.*, No. 22-80804-CIV, 2022 WL 18956206, at *1 (S.D. Fla. Aug. 18, 2022). Notably, in both *Suescum* and *Calvin*, the court declined to dismiss based on an argument that the calls/messages did not

telemarketing campaigns is appropriate for resolution on a class-wide basis, particularly, where—as here—Plaintiff intends to rely on Defendant's own call records in support.[7]  *See Morris*, 2025 WL 605616, at *8 (predominance factor met where the plaintiff demonstrated that the common issue of unwanted prerecorded calls to sell CPAP supplies could be established through common evidence of the defendant's call logs); *Desouza v. Aerocare Holdings LLC*, No. 6:22-cv-1047-RBD-LHP, 2024 WL 1252384, at *2 (M.D. Fla. Mar. 25, 2024) (predominance factor met where complaint raised TCPA and FTSA claims and all claims stemmed from the defendant sending telemarketing messages to each class member after a request to stop, and the facts could be readily determined from the defendant's records). Likewise, statutory damages are subject to generalized proof, and Defendant does not argue otherwise.  *See Morris*, 2025 WL 605616, at *8.

Defendant also argues that there are individualized issues as to whether the phone calls or energy reviews actually resulted in a sale, whether the consumers

_____

qualify as "telephonic sales calls" under the FTSA.

Later, Defendant points to *De Lage Landen Fin. Servs., Inc. v. Cricket's Termite Control Inc.*, 942 So. 2d 1001, 1004 (Fla. Dist. Ct. App. 2006), Doc. No. 41, at 7, but that case likewise did not address class certification, nor does it concern a direct claim under the FTSA. Defendant otherwise cites general legal principles and cases that do not concern the FTSA/TCPA on this point.   Doc. No. 41, at 8–9.

[7] Notably, Defendant is not arguing that each of the calls regarding the solar program differed in any material way—instead, Defendant is arguing that the calls did not qualify as "telephonic sales calls" under the FTSA at all.   Doc. No. 41, at 6–8.   But again, this issue is capable of resolution based on common proof.

were subject to a sales pitch during the energy reviews, or whether each putative class member suffered any harm therefrom (*i.e.*, Dolores example where she received a benefit but did not purchase anything).   Doc. No. 41, at 8–9.   But the undersigned finds Defendant's focus misguided, as the issue is whether the sales calls *at the outset* were violative of the FTSA, such that Defendant made automated telephonic sales calls without the called parties' consent.   *See* Fla. Stat. §§ 501.059(8)(a), 10(a)–(b).   Individual outcomes after the calls or subjectively perceived benefits of the call do not undermine the predominance of the common questions of law and fact with regard to the FTSA claim.   *Cf. Shutler*, 347 F.R.D. at 676 (with regard to similar TCPA claims, rejecting argument that predominance requirement was not met because there were "numerous" class members that benefited from the calls and thus suffered no harm; that question of harm did not "affect the core elements required to establish a TCPA violation.   The focus of the TCPA is on the way the robocalls were made and the absence of consent, rather than the individual outcomes or perceived benefits of those calls").

For these reasons, the undersigned finds that Plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

2. *Superiority.*

The last factor to consider is whether a class action is the superior vehicle for resolving the issues in this case.   The focus of the superiority analysis is on "the

relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)).   "[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability."   *Id.* at 1184 (citations omitted).   In deciding superiority, the Court must consider at least some of the factors set forth in Rule 23(b)(3), including: "the class members' interests in individually controlling the prosecution or defense of separate actions;" "the extent and nature of any litigation concerning the controversy already begun by or against class members;" "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and "the likely difficulties in managing class action."   *Kron*, 328 F.R.D. at 702 (quoting *Vega*, 564 F.3d at 1277–78 n.19).

Plaintiff argues that superiority is satisfied given the large number of claims, the relatively low statutory damages, the desirability of adjudicating these claims consistently, and the probability that class members would not have a great interest in controlling the prosecution of these claims.   Doc. No. 39, at 18.   Defendant does

not really dispute superiority, for besides a lone statement in its conclusion paragraph that "a class action is not the superior method for resolving these claims," Defendant does not address superiority in its response.  *See* Doc. No. 41, at 10.

As noted above, common questions of law and fact predominate in this case. And the undersigned agrees with Plaintiff that given the large number of potential claims, the relatively small dollar amount for statutory damages, the desirability of adjudicating these claims consistently, the probability that individual members would not have a great interest in controlling the prosecution of these claims, and in the absence of any argument by Defendant to the contrary, a class action lawsuit is the superior vehicle for resolving this litigation.  *See Kron*, 328 F.R.D. at 702; *Mohamed*, 320 F.R.D. at 317; *see also Morris*, 2025 WL 605616, at *8 (citing *Physicians Healthsource, Inc. v. Dr. Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) (citation omitted) (certifying TCPA and FTSA classes and noting that "TCPA classes are routinely certified as class actions because the 'large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims' support a finding that a class action is superior to litigating individual claims")).

## IV.   RECOMMENDATION.

For the reasons stated herein, the undersigned respectfully **RECOMMENDS**

that the Court:

1.    **GRANT** Plaintiff's Motion for Class Certification (Doc. No. 39);

2.    **CERTIFY** the following class:

> All persons (1) with a Florida area code telephone number (2) who received a call from GSFL Center (3) to a telephone number (a) purchased from Generational Energy or (b) for which Green Solutions has no record of the source (4) that was GSFL Center's first attempt to call the number and (5) was made using the ChaseData Dialer (6) in "Outbound" mode (7) as part of the "solar" campaign and (8) are included in Exhibit 8 to Plaintiff's expert's report.

3.    **APPOINT** Plaintiff William Weaver as class representative and the law

firm of Kaufman P.A. as class counsel.

4.    **REQUIRE** class counsel to submit to the Court, by a date certain, a

proposed schedule for providing the class members the requisite notice, as

outlined in Federal Rule of Civil Procedure 23(c)(2).

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is

served to serve and file written objections to the Report and Recommendation's

factual findings and legal conclusions.  Failure to serve written objections waives

that party's right to challenge on appeal any unobjected-to factual finding or legal

conclusion the district judge adopts from the Report and Recommendation.   11th

Cir. R. 3-1.

Recommended in Orlando, Florida on May 5, 2025.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy